IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


SHAW V. NEBRASKA MED. CTR.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ZACH SHAW, SPECIAL ADMINISTRATOR OF THE ESTATE
OF JOSLEN SHAW, DECEASED, APPELLANT,
V.
NEBRASKA MEDICAL CENTER AND UNIVERSITY OF
NEBRASKA BOARD OF REGENTS, APPELLEES.


Filed May 8, 2018.   No. A-17-507.


Appeal from the District Court for Douglas County: GARY B. RANDALL, Judge. Affirmed.

Ronald J. Palagi, of Law Offices of Ronald J. Palagi, P.C., L.L.O., for appellant.

Brien M. Welch, Kathryn J. Cheatle, and John A. McWilliams, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee Nebraska Medical Center.

David L. Welch and Lisa M. Meyer, of Pansing, Hogan, Ernst & Bachman, L.L.P., for appellee University of Nebraska Board of Regents.


MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Zach Shaw, the special administrator for the estate of Joslen Shaw, brought suit against the Nebraska Medical Center (NMC) and the University of Nebraska Board of Regents (collectively Appellees) for alleged negligence which resulted in the death of Joslen. Prior to trial, the district court granted Appellees' motions in limine to prohibit the estate "from calling at the time of trial any expert witness as to the standard of care, causation or damages" because the estate had failed to timely disclose any expert witness to Appellees. Subsequently, the district court granted

- 1 -

Appellees' motions for summary judgment, finding that the estate could not prove the cause of Joslen's death without expert testimony. The estate appeals from the district court's orders. For the reasons set forth herein, we affirm.

BACKGROUND

On September 20, 2012, Joslen was admitted to NMC with diagnoses of altered mental status, an ulcer on her right foot, hepatitis C with cirrhosis, and an acute kidney injury. This was Joslen's fourth admission to NMC in 3 months for various medical problems, including problems related to her heart and liver. Upon Joslen's September 20 readmission to the hospital, a chest x ray was completed. This x ray revealed that Joslen had fluid in her lungs. One possible explanation for such fluid was pneumonia. Joslen's doctors treated Joslen for her presumed pneumonia with various antibiotics. On September 25, Joslen was released from the hospital to a skilled nursing facility. Although she had not completed her course of antibiotics, no prescription for antibiotics was provided to the skilled nursing facility. As a result, Joslen received no further antibiotics after September 25.

On September 30, 2012, Joslen was again readmitted to NMC. At that time, she had shortness of breath and a deficiency in the amount of oxygen reaching the blood tissue. The estate contends that Joslen also suffered from sepsis. Joslen's condition deteriorated, and on October 6, Joslen died.

The estate filed a complaint against Appellees on December 24, 2013. Subsequently, on October 20, 2014, the estate filed an amended complaint against Appellees. The amended complaint is the operative pleading in this case. In the amended complaint, the estate alleged that Joslen's death was a result of the Appellees' negligence. Specifically, the amended complaint alleged that Joslen died of pneumonia because she was not provided with a prescription for antibiotics upon her release from NMC on September 25, 2012. In their Answers, Appellees denied that they were negligent in treating Joslen and denied that any treatment provided by them or their employees caused Joslen's death.

On February 20, 2015, a proposed scheduling order was filed. The order was signed by counsel for all of the parties and by the district court judge presiding over the case. Among other things, the order directed the estate to designate its expert witnesses by May 1. Additionally, the order indicated that trial was to be held no later than November 2.

Seven months later, on September 23, 2015, a first amended proposed scheduling order was filed. Again, the order was signed by counsel for all of the parties and by the district court judge presiding over the case. The amended order directed the estate to designate its expert witnesses by October 1. The order indicated that trial was to be held no later than April 1, 2016.

On October 30, 2015, a second amended proposed scheduling order was filed. The second amended order was signed by counsel for all of the parties and by the district court judge presiding over the case. It extended the time for the estate to designate its expert witnesses to November 1. However, it indicated that trial was still to be held no later than April 1, 2016.

According to counsel for NMC, neither NMC nor the Board of Regents received any information about the estate's expert witnesses by November 1, 2015. As a result, counsel for

NMC emailed counsel for the estate on two separate occasions in November asking about the expert witness designation. Counsel, apparently, did not receive any response to these emails.

On December 1, 2015, NMC and the Board of Regents each filed a motion in limine. In the motions, Appellees asked the court to "prohibit [the estate] from calling at the time of trial any expert witness as to the standard of care, causation or damages." Appellees argued that the estate had missed the November 1 deadline to designate any expert witnesses. A hearing was held on the motions on December 10. Counsel for the estate did not appear at the hearing. After the hearing, the district court entered an order granting Appellees' motions in limine. The court stated, the estate "is prohibited from calling any expert witnesses and introducing into evidence at trial expert testimony as to the standard of care, causation or damages."

On January 6, 2016, almost 1 month after the hearing was held on Appellees' motions in limine, the estate filed a motion to reconsider. In the motion, the estate asked the district court to reconsider its order sustaining Appellees' motions in limine. The motion alleged that "[f]or health reasons of [the estate]'s counsel, the original expert disclosure deadline and hearing date were overlooked." The motion further argued that "[f]ailure to allow [the estate] to introduce expert testimony will result in an unfair prejudice to [the estate]."

A hearing was held on the motion to reconsider on February 24, 2016. Based on discussions between counsel and the district court, it appears that the estate had designated its expert witness in the days immediately preceding the February 24 hearing. At the hearing, the estate offered into evidence an affidavit of counsel, attempting to explain the reason for failing to timely disclose its expert witnesses. The affidavit stated:

> 1. I am the attorney of record for [the estate] in this matter.
>
> 2. Due to issues regarding my health, I inadvertently failed to comply with the Court's Scheduling Order regarding expert disclosures.
>
> 3. By my signature, I offer the Court and [Appellees] my sincerest apologies and request that my client not be sanctioned for my oversight.

No further information was offered about counsel's health problems or the timing of those problems.

Ultimately, the district court entered an order denying the estate's motion to reconsider. In the order, the court stated:

> In reconsidering [the estate]'s Motion the Court notes that a review of the file makes it clear that [the estate] was in violation of his own pretrial order submitted and executed on September 23, 2015 and amended on October 30, 2015. In addition, [the estate] failed to appear for the hearing on the Motion in Limine on December 11, 2015. The Court finding no reasonable cause to reconsider its' Order finds that [the estate]'s Motion for Reconsideration is hereby overruled.

While the motion to reconsider was pending, NMC and the Board of Regents each filed a motion for summary judgment. After the district court denied its motion for reconsideration, the estate filed a motion for partial summary judgment. The estate's motion alleged that summary

judgment was proper as to Appellees' negligence being the proximate cause of Joslen's death. The estate asked that the issue of damages be left for a jury to determine.

A hearing was held on the motions for summary judgment on July 14, 2016. At the hearing, each party presented evidence in support of its motion.

Appellees offered the affidavit of Dr. William M. Johnson, who is board certified in Internal Medicine and who specializes in pulmonary diseases and critical care medicine. Dr. Johnson reviewed the medical records of Joslen from the period of time she was in the care of NMC. He opined within a reasonable degree of medical certainty that Joslen was suffering from liver disease in the months leading up to her death. As a complication of this liver disease, Joslen suffered "an organ-system involvement of the lungs known as acute lung injury." Dr. Johnson opined that the lung injury coupled with the liver disease was the cause of Joslen's death.

Dr. Johnson further opined that Joslen was not suffering from pneumonia at the time of her death as she did not have any signs of infection and her blood tests showed no signs of infection. In his opinion, the fluid in Joslen's lungs was a symptom of her liver disease. However, because the doctors at NMC could not definitively rule out pneumonia as the cause of the fluid without performing a test that, given Joslen's underlying medical conditions, likely would have caused her harm, the doctors treated her for pneumonia "preemptively." In fact, Dr. Johnson noted that Joslen's medical records indicated she was being treated for "possible pneumonia." Ultimately, Dr. Johnson opined that because Joslen did not have pneumonia, the failure to provide her with antibiotics at the skilled nursing facility after her hospitalization "had no impact on her medical status."

Appellees also offered the deposition of Dr. Cole Worley. Dr. Worley was the intern "who was actually involved in placing the orders regarding the discharge and transfer" of Joslen. In his deposition, Dr. Worley testified that prior to Joslen's discharge from NMC, he entered an order to continue her course of antibiotics. He testified that he did not know why that order was not completed. He also testified that when Joslen was discharged from NMC, she did not have any signs of infection.

At the summary judgment hearing, the estate attempted to offer an affidavit of an expert witness regarding the cause of Joslen's death. However, pursuant to the district court's order on Appellees' motions in limine, the court did not allow the affidavit to be admitted into evidence. The estate also offered into evidence affidavits from Zach, Joslen's son, and Juanita Johnson (Juanita), Joslen's mother. Both affidavits indicate that Zach and Juanita attended a meeting with NMC officials after Joslen's death. At this meeting, they allege that they were told that Joslen died "as a result of a clerical error by NMC." Specifically, Joslen died because her "pneumonia/infection . . . was not treated with antibiotics" and, as a result, her condition worsened causing sepsis and organ failure.

After the hearing, the district court entered an order granting Appellees' motions for summary judgment and denying the estate's motion for partial summary judgment. In the order, the court found that Appellees had submitted sufficient evidence that they were not negligent and did not breach the standard of care in treating Joslen. In addition, Appellees offered evidence that any care provided by them was not the cause of Joslen's death. As such, the burden of proof shifted to the estate to demonstrate a material issue of fact existed.

The district court found that the estate had presented sufficient evidence to establish a prima facie case that Appellees deviated from the standard of care:

> As the Court has already determined that not providing a patient with a prescribed medication upon release is outside the standard of care, the only testimony required would be that [Joslen] was not actually provided the prescriptions upon release. This could be provided through lay witnesses as indicated in the Deposition of [Dr. Worley]."

However, the district court also found that the estate failed to present sufficient evidence to establish a prima facie case that Appellees' negligent act caused Joslen's death. The estate was unable to present expert medical testimony regarding the cause of Joslen's death because of the court's ruling on Appellees' motions in limine. The court found that without such testimony, the estate could not establish whether Joslen died of pneumonia or due to the numerous other health problems she suffered in the months leading up to her death.

The estate appeals from the district court's orders.

## ASSIGNMENTS OF ERROR

On appeal, the estate assigns three errors, which we consolidate to two errors for our review. First, the estate asserts that the district court erred in granting Appellees' motions in limine to exclude from evidence any expert medical testimony offered by the estate as a result of its failure to comply with scheduling orders. Second, the estate asserts that the district court erred in granting Appellees' motions for summary judgment because there was a genuine issue of material fact as to the cause of Joslen's death.

## STANDARD OF REVIEW

Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion. *Putnam v. Scherbring*, 297 Neb. 868, 902 N.W.2d 140 (2017). Similarly, appellate review of a district court's use of inherent power is for an abuse of discretion. *Id*. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Thone v. Regional West Med. Ctr.*, 275 Neb. 238, 745 N.W.2d 898 (2008). In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence. *Id*. In conducting our review, we are mindful of the fact that on questions of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id*.

ANALYSIS

*Exclusion of Expert Witness.*

The estate argues that the district court erred in granting Appellees' motions in limine and prohibiting it from calling any expert medical witness to testify at trial. The estate asserts that the district court's action constituted a discovery sanction and that there was no basis for such a harsh sanction as the estate only missed "a single deadline" and failed to attend one hearing. Brief for appellant at 18. The estate further asserts that the district court did not warn it about the possible consequences of violating the scheduling order, nor did it consider a less drastic sanction. The estate cites to the Supreme Court's decision in *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 407 N.W.2d 146 (1987), in support of its assertions.

In their briefs on appeal, Appellees assert that the district court's decision to grant the motions in limine and prohibit the estate from calling an expert medical witness was not a discovery sanction, but was, instead, the district court's exercise of its inherent power to enforce its prior orders. To support their arguments, Appellees rely on the recent Supreme Court decision in *Putnam v. Scherbring*, *supra*.

*Putnam v. Scherbring* involved a negligence action which arose out of a motor vehicle accident. In his complaint, plaintiff alleged that a vehicle driven by the defendants' daughter collided with his car and caused him injuries. He alleged that he had significant medical bills as a result of the injuries he suffered. In the defendants' answer, they admitted negligence, but denied that the accident proximately caused all of the plaintiff's injuries.

Approximately 4 months after the plaintiff in *Putnam v. Scherbring* filed his complaint, the case was dismissed by the district court for lack of prosecution. Upon plaintiff's motion, the case was later reinstated. After the case was reinstated, a scheduling order was entered. This order provided the plaintiff with 3 months to designate expert witnesses and provided both parties with more than 5 months to complete discovery. The plaintiff did not comply with the requirements of the scheduling order. As a result, he requested a new scheduling order be entered. This new order provided the plaintiff with 6 additional months to designate expert witnesses and complete discovery. After this new discovery deadline, plaintiff filed two motions to continue the trial as a result of the health problems of his counsel. Ultimately, plaintiff obtained new counsel. This new counsel filed a motion to reopen discovery. Later, plaintiff's new counsel also filed a motion to add four additional expert witnesses. This request was made nearly 3 years after plaintiff originally filed his law suit, 1 year after the extended expert opinion disclosure deadline, and approximately 8 months after the original trial date. The district court overruled the motions. In addition, the district court granted a motion in limine filed by the defendants to exclude evidence that was not disclosed during discovery, which included expert reports and opinions concerning medical bills.

As a result of the district court's granting of the motion in limine, at trial, plaintiff in *Putnam v. Scherbring* was not able to offer into evidence a majority of his medical bills or expert testimony about the reasonableness and necessity of the medical bills he was permitted to offer. The jury ultimately returned a verdict in favor of the defendants and plaintiff appealed.

On appeal, this court, in a split decision, found that the district court had abused its discretion in excluding, as a discovery sanction, nearly all of the plaintiff's medical bills as well

as testimony from the plaintiff's expert witness that such bills were reasonable and necessary. *Putnam v. Scherbring*, No. A-15-610, 2017 WL 163796 (Neb. App. Jan. 17, 2017) (selected for posting to court website). In reaching this decision, we relied on the Supreme Court's decision in *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 407 N.W.2d 146 (1987), which discusses the factors a trial court is to consider in imposing a discovery sanction.

The Supreme Court granted the defendants' petition for further review. Ultimately, the Supreme Court reversed this court's decision and affirmed the decision of the trial court to exclude evidence that was not disclosed during discovery, including the medical bills. See *Putnam v. Scherbring*, 297 Neb. 868, 902 N.W.2d 140 (2017). In the opinion, the Supreme Court found that the district court's exclusion of the evidence did not constitute a discovery sanction, but was, instead, the district court's enforcement of its previous orders which had extended discovery deadlines and continued trial dates:

> [T]he parties stipulated to a proposed progression order with a discovery deadline and the district court adopted and entered the progression order. The court was initially flexible and amended the order and continued trial three times to accommodate [the plaintiff]. But, it ultimately elected to enforce its progression order when, shortly before trial, [the plaintiff] attempted to disclose new expert opinions and evidence which would undoubtedly cause further delay. This was fundamentally different from imposing a sanction for a party's attempt to abuse the discovery process.

*Id*. at 877, 902 N.W.2d at 146.

As a result of its finding that the exclusion of the evidence was not a discovery sanction, the Supreme Court held that the district court was not required to consider the *Norquay* factors. *Putnam v. Scherbring, supra.*The Supreme Court stated, "Nebraska courts, through their inherent judicial power, have the authority to do all things necessary for the proper administration of justice." *Id*. at 877, 902 N.W.2d at 146. The court reviewed the district court's decision to exclude the evidence for an abuse of discretion. The court concluded that given the "tortured progression of the case," the district court did not abuse its discretion in enforcing its previous scheduling orders. *Id*. The court cited the district court's statement that "'proposed scheduling orders have to mean something.'" *Id*. at 878, 902 N.W.2d at 147.

Upon our review, herein, we agree with Appellees' assertion that the facts of this case are similar to the facts in *Putnam v. Scherbring*. Accordingly, we find that the district court's decision to grant Appellees' motions in limine did not constitute a discovery sanction, but instead, was the district court's enforcement of its previous scheduling orders.

The district court entered multiple scheduling orders, repeatedly extending the estate's time to designate its expert witness. Counsel for the estate signed each of these orders, acknowledging the scheduling requirements contained therein. However, despite the 8 months that passed from the time the first scheduling order was entered to the time the second amended proposed scheduling order required the estate's designation of an expert witness, the estate failed to make such a designation. In fact, in the weeks following the expiration of the second amended proposed scheduling order, counsel for the estate failed to respond to the emails of counsel for Appellees asking for the expert witness designation. Additionally, counsel for the estate failed to respond in

any manner to Appellees' motions in limine and failed to attend the hearing on the motions. Counsel then waited almost a month after the district court entered its order granting the motions in limine to file the estate's motion to reconsider. By this time, the estate's designation of an expert witness was at least 2 months overdue and had still not been provided to the court or to Appellees.

The estate did not provide its expert witness designation until a few days prior to the hearing on the motion to reconsider. At this hearing, the estate's counsel submitted into evidence an affidavit indicating that due to health problems, counsel had failed to comply with the district court's scheduling orders. However, the affidavit did not explain the nature of counsel's health problems or how counsel's health problems had affected his ability to comply with the scheduling orders for a period of 8 months. In addition, it did not explain why counsel did not respond to Appellees' counsel's emails or why he did not appear at the hearing on the motions in limine. Moreover, the affidavit did not explain why counsel had waited almost 1 month to take any action on the district court's decision to grant the motions in limine. We note that our record indicates that two attorneys were involved in the case, on behalf of the estate, since at least June 2015, approximately 5 months prior to the final deadline for the estate to designate its expert witness. The second attorney conducted at least one deposition and appeared at other hearings on behalf of the estate. There is no explanation as to why the primary attorney for the estate did not seek the assistance of cocounsel to meet his responsibilities if his health prevented him from doing so. Given the limited information contained in the affidavit, we do not find that counsel adequately explained or excused the failure to disclose an expert witness.

The district court provided the estate with repeated chances to designate an expert witness and to keep the case moving. Despite these repeated chances, the estate failed to comply with the scheduling orders and caused long delays in the proceedings. When the district court provided the estate an opportunity to explain its shortcomings, it failed to provide any meaningful explanation or excuse. Given these facts, we find that the district court's decision to grant the motions in limine constituted a means of enforcing its prior orders, rather than a discovery sanction.

Because we conclude that the district court's decision to grant Appellees' motions in limine was the enforcement of its previous scheduling orders, we review the decision for an abuse of discretion. In *Putnam v. Scherbring*, 297 Neb. 868, 878, 902 N.W.2d 140, 146-47 (2017), the Supreme Court stated:

> [A] court abuses its discretion when its decision is based upon reasons that are *untenable* or *unreasonable* or if its actions is *clearly* against justice or conscience, reason, and evidence. This is a fairly deferential standard. Moreover, a trial court has broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.

Given this standard of review and given the amount of discretion afforded to the district court, we are unable to find that the district court abused its discretion in granting the motions in limine and in excluding the estate's expert medical testimony.

There is nothing in the record which would indicate that the district court based its decision to exclude the expert witness testimony for any reasons that were untenable or unreasonable. Rather, the record reflects that the district court tried to be flexible with the estate, but ultimately,

the estate ignored repeated orders of the court. In addition, the estate ignored correspondence from opposing counsel and failed to attend a scheduled hearing. The district court had to balance the estate's actions against the need to keep the case progressing. At the time of the final deadline for the estate to designate its expert witness, the case had been pending for 22 months. By the time the estate actually attempted to file its designation of an expert witness, it was 4 months past the final deadline to designate the expert witness and the case had been pending for almost 26 months. As the trial court stated in *Putnam v. Scherbring*, 297 Neb. at 878, 902 N.W.2d at 147, progression orders "'"have to mean something."'"

Given the facts of this case, we cannot say that the district court abused its discretion in granting Appellees' motions in limine and excluding any expert medical witness put forward by the estate.

*Granting Summary Judgment Against Estate.*

The estate asserts that the district court erred in granting Appellees' motions for summary judgment. Specifically, the estate argues that even without expert medical testimony, it could sufficiently establish a material issue of fact existed as to the cause of Joslen's death and that, as a result, summary judgment was not appropriate. Upon our review, we affirm the decision of the district court to grant Appellees' motions for summary judgment.

A party makes a prima facie case that it is entitled to summary judgment by offering sufficient evidence that, assuming the evidence went uncontested at trial, would entitle the party to a favorable verdict. *Thone v. Regional West Med. Ctr.*, 275 Neb. 238, 745 N.W.2d 898 (2008). If the moving party makes such a case, the burden then shifts to the nonmoving party to produce admissible contradictory evidence which raises a genuine issue of material fact. *Id*. If it cannot, summary judgment should be granted. *Id*.

In the district court's order granting Appellees' motions for summary judgment, it determined that the Appellees had offered sufficient evidence to demonstrate that Joslen had not died of pneumonia and that, as a result, Appellees' failure to provide Joslen with antibiotics at the time of her discharge from the hospital was not the cause of her death. Appellees' expert medical witness opined that Joslen's death was the result of "numerous underlying conditions which she was suffering from." The district court also determined that the estate had failed to raise a genuine issue of material fact as to the cause of Joslen's death by producing admissible contradictory evidence to oppose Appelees' evidence. The district court indicated that without expert medical testimony, the estate could not adequately prove the causal connection between Appellees' failure to provide Joslen with the antibiotic and her death.

On appeal, the estate asserts that, contrary to the district court's determination, it did produce admissible contradictory evidence to oppose the opinion of Appellees' expert witness concerning Joslen's cause of death. Specifically, the estate asserts that the affidavits of Zach and Juanita demonstrate that officials employed by NMC admitted that Joslen died of untreated pneumonia. The estate's assertions are without merit.

The affidavits of Zach and Juanita are not sufficient to create a material issue of fact as to the cause of Joslen's death. In medical malpractice cases, expert testimony is almost always required to prove proximate causation. See *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630

(2018). The affidavits offered by the estate do not indicate exactly which official from NMC made the admissions regarding the cause of Joslen's death. The affidavits indicate that one doctor was present at the meeting, but it is not clear whether that doctor was the one who made the admissions. In addition, it is not clear what role, if any, that doctor played in Joslen's care while she was at NMC. Essentially, there is nothing in the affidavits to indicate that any admissions made by the NMC officials were based upon a reasonable degree of medical certainty, nor was there any explanation of how the officials had come to this conclusion. Accordingly, we agree with the district court's determination that even if the statements contained in the affidavits would be admissible at trial, "[t]hose statements would not provide the necessary medical testimony to establish the causal connection between the deviation of the standard of care and the ultimate harm alleged." We affirm the decision of the district court to grant Appellees' motions for summary judgment.

## CONCLUSION

We conclude that it was not an abuse of discretion for the district court to enforce its scheduling order by excluding any expert medical witness put forward by the estate. Without such expert medical testimony, we also conclude that the estate cannot prove the cause of Joslen's death. Accordingly, we affirm the decision of the district court to grant Appellees' motions for summary judgment.

AFFIRMED.